IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID RHEEM,** | : | Civil No. 1:23-CV-75 |
| Plaintiff | : | |
| | : | (Judge Mehalchick) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **UPMC PINNACLE HOSPITALS,** | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

## I. Factual and Procedural Background

This workplace disability discrimination case comes before us for resolution of a motion to compel. (Doc. 36). With respect to these discovery disputes, the plaintiff's complaint sets forth the following factual allegations which define for us the relevant issues in this litigation: Beginning in 2018, the plaintiff, David Rheem, was employed as the Imaging Manager of Nuclear Medicine at UPMC, a job he held until he was terminated in February 2021. During his tenure at UPMC Rheem consistently received above-average performance reviews and had no disciplinary history throughout the course of his employment.

Rheem suffers from spondylolisthesis, a spinal condition involving spine instability which causes severe lower back and leg pain and allegedly substantially limits one or more of his major life activities, including, walking, standing, lifting, bending, and performing other manual tasks. Between 2017 and 2020, Rheem

1

underwent multiple medical procedures to alleviate this painful condition, but with limited success. Consequently, Rheem sought various reasonable accommodations in order to perform his duties at UPMC. Additionally, in order to address his continued, intractable pain on his surgeon's recommendation, Rheem began using CBD oils and gummies around October 2020. These CBD products are legal but are derived from the same types of hemp plants that produce marijuana, which remains a controlled substance. Because they are related products, on occasion CBD use can result in positive tests for the active ingredient in marijuana, THC.

For its part, during Rheem's employment UPMC had a fitness for duty policy which "recognize[d] that staff members can become unfit for duty for reasons of . . . chemical use, abuse/dependency . . . ." This policy provided for drug testing of employees and stated that in some instances drug or alcohol dependency could render an employee unfit and subject to termination. This workplace drug use fitness policy was, in turn, tempered by a practice of affording employees who were facing addiction issues "last chance agreements" which allowed workers to return to their duties subject to treatment conditions as part of a program of progressive discipline.

Despite knowing of Rheem's use of CBD products to treat his spondylolisthesis, which could occasionally yield positive drug test results, in February of 2021, UPMC officials accused Rheem of being impaired due to ingesting medical marijuana. Rheem denied these allegations but was suspended and

directed to engage with UPMC's employee assistance program (EAP). Rheem participated in the EAP program, providing UPMC with information regarding his medically directed use of CBD products to alleviate his chronic spinal pain, and was informed that UPMC routinely allows first-time minor drug and/or alcohol offenders to participate in its "Last Chance Agreement" program, rather than face termination. Notwithstanding these assurances, on February 22, 2022, UPMC terminated Rheem's employment citing his alleged marijuana use. At no time was Rheem offered a last chance agreement, even though he alleges that other similarly situated employees were given the opportunity to enter into such agreements with UPMC.

Rheem's complaint alleges that this work-related justification for his termination was essentially pretextual and asserts that UPMC's decision to terminate him was based upon his medical condition in violation of the interference and retaliation provisions of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and Pennsylvania's state law analogues to these federal workplace disability discrimination statutes.

With Rheem's claims framed in this fashion, the parties are embroiled in what we understand to be three related discovery disputes. First, Rheem has propounded discovery demands upon UPMC and issued a subpoena to a related, non-party entity, UPMC Benefit Management Services, Inc., seeking information regarding other UPMC employees who were contemporaneously offered opportunities to participate

in last chance agreements at or around the time Rheem was denied the benefits of this program. Rheem contends that this comparator evidence is relevant to his claims of disparate, discriminatory treatment by UPMC. Initially it appeared that the parties had agreed to the production of these records, which were potentially relevant to Rheem's claims that he experienced pretextual discipline since on January 17, 2024. UPMC agreed to search for and produce any Last Chance Agreements from any specified UPMC Pinnacle Hospitals from January 1, 2016 through the present and further agreed to search for and produce any documents related to drug and alcohol violations and related disciplines for any UPMC Pinnacle Hospitals from January 1, 2016 through the present. (Doc. 37-9).[1] However, upon reflection, UPMC now declines to produce this information which they previously agreed to provide, citing relevance and state law privacy concerns.

In addition, Rheem seeks discovery from a non-party co-worker, Robin Wible. Specifically, Rheem urges us to order Ms. Wible to turn her personal cell phone over to UPMC so that UPMC can conduct a forensic examination of the phone for derogatory information relating to the plaintiff. In support of this request, Rheem alleges that Wible was the person who initiated the report of his alleged drug use and

---

[1] We note that the subpoena to UPMC Benefit Management Services, Inc. seeks similar information but for a different and narrower time frame, from January 1, 2018, rather than January of 2016.

asserts that Ms. Wible had been disciplined in the past for disparaging remarks about Rheem's alleged drug use.

UPMC opposes this request, noting the following: First, according to UPMC, it is undisputed that the concerns regarding alleged drug use by Rheem were first raised by another UPMC employee Katie Winemiller, and Wible simply forwarded Winemiller's concerns to the appropriate UPMC officials who conducted their own separate investigation into this matter. Given Wible's limited involvement in this matter, and the prior production of emails which enable Rheem to thoroughly investigate these issues without a forensic search of a non-party's cell phone, UPMC argues that this discovery is inappropriate. UPMC also raises a significant practical concern. According to the defendant: "Ms. Wible's personal cell phone is an Android device that is not backed up by any sort of cloud storage system. As such, Ms. Wible's personal cell phone only contains communications that are less than 90 days old." (Doc. 38 at 12).

Finally, the parties cavil about the scope of UPMC's search of electronically stored information (ESI). In particular, the parties argue over familiar terrain in the field of ESI searches; namely, the proper scope of search terms used to canvas voluminous stored electronic communications. For his part, Rheem insists that the search terms used were too narrow and failed to include relevant terms such as "CBD", "THC", and "marijuana." UPMC has responded to this contention by stating

that these terms were, in fact, used in the ESI search which it conducted, and that search yielded more than 2000 potentially relevant documents containing some 368,000 pages of material.

Upon consideration of the parties' positions, for the reasons set forth below, we will GRANT this motion to compel, in part, and DENY the motion, in part, as follows: The motion will be GRANTED to the extent that UPMC and its related entity UPMC Benefit Management Services, Inc., will be required produce any Last Chance Agreements from specified UPMC Pinnacle Hospitals and produce any documents related to drug and alcohol violations and related disciplines for specified UPMC Pinnacle Hospitals during the time periods embraced by the discovery requests. In all other respects the motion to compel is DENIED.

## II. Discussion

### A. Guiding Legal Standards

The parties' discovery disputes are judged against familiar legal guideposts. As we have observed when addressing similar discovery issues relating to ESI and forensic searches of cell phones:

> Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

> issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.... Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *2–3 (M.D. Pa. Jan. 9, 2020).

Further:

One other immutable factor governs the scope of discovery under Rule 26.

> "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009). See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

Lopez v. Wetzel, No. 3:21-CV-1819, 2024 WL 2055041, at *4 (M.D. Pa. May 6, 2024).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Finally, we recognize that this discovery dispute relates both to requests for production served upon UPMC, a party, and a subpoena issued to a related, non-party entity, UPMC Benefit Management Services, Inc. However, the difference between the form of these two discovery tools does not alter our relevance analysis since "Rule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).'" Andresen v. Pennsylvania, No. 1:20-CV-989, 2022 WL 2918900, at *2 (M.D. Pa. July 25, 2022) (quoting First Sealord Sur. V. Durkin & Devries Ins. Agency, 918 F.Supp.2d 362, 382 (E.D. Pa. 2013)).

These are the guideposts which govern our analysis of these discovery disputes.

## B. The Motion to Compel Will Be Granted, in Part, and Denied, in Part.

### 1. UPMC Should Produce Last Chance Agreements and Documents Related to Drug and Alcohol Violations and Related Discipline from Specified UPMC Pinnacle Hospitals.

Guided by these legal benchmarks we, first, conclude that UPMC's initial instincts were correct: UPMC and its related non-party entity, UPMC Benefit Management Services, Inc., should search for and produce any Last Chance Agreements from specified UPMC Pinnacle Hospitals as requested through January 2023 and further search for and produce any documents related to drug and alcohol violations and related disciplines for specific UPMC Pinnacle Hospitals as requested through January 2023.

At the outset, we agree with Rheem that this information, which may reveal whether other similarly situated UPMC employees received disparate treatment, is potentially relevant to one of the lynchpins of the plaintiff's case, his assertion that UPMC's ostensible justification for his termination based upon the corporate conduct policy was pretextual. In this regard, it is well settled that: "A plaintiff can demonstrate pretext by presenting evidence that similarly situated persons not within the plaintiff's protected class were treated more favorably by the defendant employer". Wright v. Providence Care Ctr., LLC, 822 F. App'x 85, 92 (3d Cir. 2020)

(citing Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998)). As such, this information is discoverable and should be produced.

We recognize that UPMC resists this discovery by arguing that these other employees who were provided last chance agreements are not truly comparable to Rheem because Rheem was a supervisor, and the other employees did not hold supervisory positions. To be sure, at the end of the day the law sets exacting standards for the admission of comparator evidence in disability discrimination cases. On this score:

> To be similarly situated, comparator employees must be similarly situated in "all respects." In re Tribune Media Co., 902 F.3d at 403. A determination of whether employees are similarly situated takes into account factors such as an employee's job responsibilities, the supervisors and decision-makers, and the nature of the misconduct at issue. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259–261 (5th Cir. 2009).

Wright, 822 F. App'x at 92.

Therefore, we recognize that the comparator evidence sought by Rheem in discovery ultimately may not be admissible at trial. But this speculative assertion that undisclosed evidence may not be deemed admissible at trial does not defeat this discovery request for at least two reasons. At the outset, it is clear that: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b). Therefore, ultimate rulings on evidentiary admissibility do not cabin and confine the scope of pre-trial discovery. Moreover,

12

and more fundamentally, it is not the province of the parties to unilaterally make these relevance determinations in order to withhold matters that are relevant to any party's claim or defense.[2] Rather, these final evidentiary determinations will be made by the court, after full and fulsome discovery.

The defendant also asserts that the privacy restrictions imposed by the Pennsylvania Drug and Alcohol Abuse Control Act ("PDAAC"), 71 P.S. § 1690.108(b)(1), prevents it and its related non-party entity from producing these records concerning to drug and alcohol impairment of other employees. We agree that these records are entitled to privacy protections, but note that Pennsylvania law also expressly permits disclosure:

> [F]or purposes unrelated to such treatment or benefits only upon an order of a court of common pleas after application showing good cause therefor. In determining whether there is good cause for disclosure, the court shall weigh the need for the information sought to be disclosed against the possible harm of disclosure to the person to whom such information pertains, the physician-patient relationship, and to the treatment services, and may condition disclosure of the information upon any appropriate safeguards.

71 P.S. § 1690.108(b)(2).

In this case, we have undertaken the analysis called for by law, and find that good cause exists for these disclosures. We further conclude that the legitimate third-

---

[2] In fact, we note that if the defendant is correct that these other employees are not true comparators to Rheem, then this information may still be discoverable since it is relevant to and bolsters the business justification defense which UPMC is advancing in this case.

party privacy concerns that exist in this case can be addressed through an appropriate stipulated confidentiality order and note that the parties have previously stipulated to the confidentiality of some information. Therefore, these concerns do not override the parties' need for access to this potentially probative evidence and this information should be disclosed.

### 2. We Will Not Order a Forensic Review of a Non-Party's Personal Cell Phone.

Rheem also invites us to intervene on his behalf and order a forensic search of a coworker's cell phone. Specifically, Rheem alleges that a coworker, Robin Wible, was the person who initiated the report of his alleged drug use and asserts that Ms. Wible was later disciplined for disparaging remarks about Rheem's alleged drug use, including an email reference to Rheem as a "drug addict." Based upon this proffer, and his assertion that Wible occasionally used her personal cell phone for business purposes, Rheem invites us to order UPMC to secure the phone and conduct some sort of forensic review of this non-party's personal cell phone.

We will decline this invitation. In this regard, we believe that considerations of privacy and practicality, along with relevance and proportionality, all caution against ordering a forensic review of this non-party's personal cell phone. At the outset:

> [W]e recognize that there is a uniquely intrusive aspect to this proposal, which would entail a forensic review of the electronic media of [a non-party] persons. In framing the approach to such discovery, we must be

mindful of the fact that social media is at once both ubiquitous and often intensely personal, with persons sharing through social media, and storing on electronic media, the most intimate of personal details on a host of matters, many of which may be entirely unrelated to issues in specific litigation. As the Supreme Court has observed in a criminal context:

> [T]here is an element of pervasiveness that characterizes cell phones but not physical records. Prior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day. Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception.

Riley v. California, 573 U.S. 373, 395, 134 S. Ct. 2473, 2490, 189 L. Ed. 2d 430 (2014). Thus, "[t]oday ... it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate." Id.

Acknowledging this fact of our modern society:

> Numerous courts have also recognized this need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. See John B. v. Goetz, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns"). "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems. Scotts Co. LLC v. Liberty Mut. Ins. Co., No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007).

Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016).

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *4 (M.D. Pa. Jan. 9, 2020).

This caution is particularly appropriate in the instant case for at least three reasons. First, as a practical matter, UPMC has asserted that: "Ms. Wible's personal cell phone is an Android device that is not backed up by any sort of cloud storage system. As such, Ms. Wible's personal cell phone only contains communications that are less than 90 days old." (Doc. 38 at 12). Given the limited retention span of the cell phone, pertinent texts simply would no longer be saved on this device. Since "a court should not enter an order compelling a party to produce documents where the documents do not exist," Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014), we should resist ordering a forensic examination of this third party's cell phone for material that no longer exists.

Considerations of relevance also weigh against ordering this forensic examination. It appears that Wible's role in reported suspected drug use by Rheem was limited to passing along information received from another co-worker to corporate superiors. Thus, there is no indication that Wible played any policy-making or decision-making role in this matter. Rather, she was merely a conduit for information. Further, Rheem's proffer of relevance relating to Wible actually seems to be at odds with his theory of the case. According to Rheem, his termination for alleged drug use was pretextual; Rheem believes that the real reason he was fired

was his spinal disability. Yet, the disparaging remarks that Rheem attributes to Wible indicate that she sincerely believed him to be a drug user and abuser, a belief which tends to contradict the plaintiff's theory of his own case.

Finally, given the impracticality of any forensic search at this time, and the marginal relevance of this of this evidence, we find that a forensic review of Wible's personal cell phone would be both disproportionate and particularly invasive of this non-party's personal privacy. Therefore, we will decline to order such a search.

### 3. The ESI Search in This Case Was Adequate

Finally, the parties argue over a recurring topic in the field of ESI searches; namely, the proper scope of search terms used to canvas voluminous stored electronic communications. For his part, Rheem insists that the search terms used were too narrow and failed to include relevant terms such as "CBD", "THC", and "marijuana." UPMC has responded to this contention by stating that these terms were, in fact, used in the ESI search which it conducted, and that search yielded more than 2000 potentially relevant documents containing some 368,000 pages of material.

As we have noted in the past, ESI searches are best performed in a collaborative fashion and the guiding benchmarks for ESI searches, the Sedona Principles:

> [I]dentify two specific, collaborative strategies which, when employed by litigants, enhance the fairness and transparency of voluminous ESI

17

> discovery review: The use of relevant search terms or technology assisted review to cull ESI and on-going sampling of data to assess the accuracy of search term searches. Id. at 164-67. This process, however, places reciprocal responsibilities on all litigants. First, for requesting parties, it is clear that discovery requests for electronically stored information should be as specific as possible. This duty of specificity applies to the formulation of search terms to be used in ESI searches. These search terms should be tailored to the needs of the case and designed to capture that which is relevant without burdening parties with excessive, irrelevant data. For responding parties, there is a corresponding duty to ensure the accuracy of searches by cooperating in sampling techniques that allow the parties to revise their searches to locate that which is relevant, protect that which is privileged, and exclude that which does not pertain to the parties' dispute.

Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 WL 7102450, at *2 (M.D. Pa. Dec. 23, 2019). Further, decisions regarding whether to modify ESI search term parameters rest in the sound discretion of the court. Id. at *7 (citing Shaw Grp. Inc. v. Zurich Am. Ins. Co., No. CIV.A. 12-257-JJB, 2014 WL 4373210, at *6 (M.D. La. Sept. 3, 2014)).

Applying these legal guideposts, and exercising our discretion, we will decline to further broaden the ESI search conducted in this case. While the collaborative efforts between the parties may have fallen short of the ideals expressed in the Sedona Principles, we find that the current search appears to have been adequate. This lawsuit involves an important, but fairly straightforward and discrete series of allegations. Moreover, to the extent that search terms such as "CBD", "THC", and "marijuana," were relevant to an ESI search of UPMC's records, the defendant insists that these search terms were used, and that search

disclosed more than 2000 potentially relevant documents containing some 368,000 pages of material. Absent some further showing of a deficiency in this ESI search protocol, we believe that the reported results of this search suggest that it has adequately captured potentially relevant electronically stored data. This is all that any party can demand or expect. Therefore, this request will be denied.

    An appropriate order follows.

                                        */s/ Martin C. Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge

DATED: October 15, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID RHEEM, | : | Civil No. 1:23-CV-75 |
| Plaintiff | : | |
| | : | (Judge Mehalchick) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| UPMC PINNACLE HOSPITALS, | : | |
| Defendant. | : | |

# ORDER

AND NOW, this 15th day of October 2024, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiff's motion to compel (Doc. 36) is GRANTED, in part, and DENIED, in part, as follows: The motion is GRANTED to the extent that UPMC and its related entity UPMC Benefit Management Services, Inc., will be required produce any Last Chance Agreements from specified UPMC Pinnacle Hospitals and produce any documents related to drug and alcohol violations and related disciplines for specified UPMC Pinnacle Hospitals during the time periods embraced by the discovery requests through January of 2023. In all other respects the motion to compel is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge