## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DAVID RHEEM,

               Plaintiff,

    v.

UPMC PINNACLE HOSPITALS,

               Defendant.

CIVIL ACTION NO. 1:23-CV-00075

(MEHALCHICK, J.)

### MEMORANDUM

Plaintiff David Rheem ("Rheem") initiated this action by filing a complaint on January 16, 2023. (Doc. 1). On January 3, 2024, Rheem filed the operative amended complaint against Defendant UPMC Pinnacle Hospitals ("UPMC"). (Doc. 28). Before the Court is a motion for summary judgment filed by UPMC. (Doc. 58). For the reasons provided herein, UPMC's motion will be **GRANTED in part** and **DENIED in part**. (Doc. 58).

### I.   BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 60; Doc. 71). UPMC is a nonprofit entity that consists of three hospitals operating under one license. (Doc. 60, ¶ 1; Doc. 71, ¶ 1). Rheem began working for UPMC as a Staff Nuclear Medicine Technologist in 2000 before leaving in 2005. (Doc. 60, ¶¶ 3-4; Doc. 71, ¶¶ 3-4). UPMC hired Rheem again in 2008 as a System Supervisor of Nuclear

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. The facts have been taken in the light most favorable to the non-moving party with respect to the motion.

Medicine. (Doc. 60, ¶ 5; Doc. 71, ¶ 5). Around 2016, Rheem disclosed to UPMC, his supervisor, and his coworkers that he suffers from spondylolisthesis, a spinal condition that causes severe lower back pain. (Doc. 60, ¶¶ 8-9; Doc. 71, ¶¶ 8-9). In 2017, Rheem's spondylolisthesis became severe, and he required surgical intervention. (Doc. 60, ¶ 10; Doc. 71, ¶ 10). Throughout his tenure working for UPMC, Rheem requested several accommodations, all of which were granted, including multiple leaves of absence from the workplace as well as a modified work schedule. (Doc. 60, ¶ 11; Doc. 71, ¶ 11). UPMC promoted Rheem to the position of Imaging Manager of Nuclear Medicine in July 2018. (Doc. 60, ¶ 6; Doc. 71; ¶ 6).

UPMC maintains a Fitness for Duy Policy which allows for UPMC to subject employees to medical examinations, including drug and alcohol screenings, if it has a reasonable suspicion of an employee's lack of fitness for duty. (Doc. 60, ¶ 12; Doc. 71, ¶ 12). UPMC also maintains a policy of allowing it to issue Last Chance Agreements, which allow an employee to return to work after being found unfit for duty due to drug or alcohol use. (Doc. 60, ¶ 13; Doc. 71, ¶ 13).

On or around January 25, 2021, Rheem held a nuclear medicine staff meeting at UPMC Memorial, a hospital in York, Pennsylvania. (Doc. 60, ¶ 14; Doc. 71, ¶ 14). Three of Rheem's subordinate employees, Jodi Leopardi ("Leopardi"), Alexis Sauble ("Sauble"), and Katie Winemiller ("Winemiller") attended this meeting. (Doc. 60, ¶ 15; Doc. 71, ¶ 15). During this meeting, Rheem sat down, put his feet up on a counter, and mentioned that he had eaten some kind of gummy. (Doc. 60, ¶¶ 16-17; Doc. 71, ¶¶ 16-17). UPMC claims Rheem appeared lethargic and overmedicated during the meeting. (Doc. 60, ¶¶ 16-17). UPMC also claims that Rheem told a story about eating a gummy he obtained from a "friend of his who

had a prescription" that made him so high that he sat on the toilet for hours. (Doc. 60, ¶ 17). UPMC further claims Rheem stated he needed to take smaller doses of the gummy in the future and drew a picture to illustrate how much he should eat. (Doc. 60, ¶ 18). Rheem denies UPMC's account of the meeting and claims he was not lethargic or overmedicated. (Doc. 71, ¶ 16). Rheem also asserts that he told a story about consuming an over-the-counter CBD gummy one night after work, which made him sick. (Doc. 71, ¶ 17). Further, Rheem states that his doctor recommended he consume over-the-counter CBD products to relieve his pain from his spondylolisthesis and that UPMC was aware of his CBD use. (Doc. 71, ¶ 17). Rheem denies ever stating the CBD product made him high and denies drawing a picture of the gummy. (Doc. 71, ¶ 17-18).

At the same meeting, Rheem mentioned that he did not want to obtain a medical marijuana prescription and that he feared doing so might require him to surrender his firearms. (Doc. 60, ¶ 19; Doc. 71, ¶ 19). According to UPMC, Rheem stated he did not want to get his "own" medical marijuana card; Rheem claims he only discussed not wanting a medical marijuana prescription in general. (Doc. 60, ¶ 19; Doc. 71, ¶ 19). After the meeting, Winemiller, with Leopardi present, reported Rheem's conduct to Robin Wible ("Wible"), UPMC Memorial's Director. (Doc. 60, ¶¶ 20-21; Doc. 71, ¶¶ 20-21). UPMC claims that Sauble was also present for the conversation, but Rheem asserts that Sauble was not present, and Leopardi was only present by coincidence. (Doc. 60, ¶¶ 20-21; Doc. 71, ¶¶ 20-21). On February 3, 2021, Wible emailed Corina Hudak ("Hudak"), UPMC's Director of Human Resources, regarding Rheem. (Doc. 60, ¶ 22; Doc. 71, ¶ 22).

On February 4, 2021, Hudak emailed Kimberly Etter ("Etter"), UPMC's Senior Director of Human Resources, informing her of Rheem's behavior during the staff meeting

and asking her how to proceed. (Doc. 60, ¶ 23; Doc. 71, ¶ 23). On or around February 8, 2021, Etter and Karen Botts ("Botts"), UPMC's Senior Director of Imaging, met with Rheem to discuss his behavior during the staff meeting. (Doc. 60, ¶ 24; Doc. 71, ¶ 24). During this meeting, Rheem denied ever having used marijuana, admitted to using CBD, and agreed to be drug tested. (Doc. 60, ¶¶ 27-28; Doc. 71, ¶¶ 27-28). Rheem also admitted to Etter and Botts that he discussed obtaining a marijuana prescription and told a story about eating a gummy and sitting on the toilet for hours. (Doc. 60, ¶ 26; Doc. 71, ¶ 26). Rheem signed a memorandum confirming he would be suspended pending drug testing, and on February 8, 2021, Rheem submitted to a drug test. (Doc. 60, ¶¶ 28-29; Doc. 71, ¶¶ 28-29). UPMC interpreted the drug test level as reflecting 15 nanograms per milliliter per marijuana metabolites. (Doc. 60, ¶ 30; Doc. 71, ¶ 30). Rheem contests the accuracy of UPMC's interpretation of the drug test. (Doc. 71, ¶ 30). According to Rheem, the drug test results show 105 nanograms per milliliter of marijuana metabolites. (Doc. 71, ¶ 30). UPMC's Medical Review Officer, Dr. Olusola Akindele ("Akindele"), communicated with Rheem regarding these results, which were also communicated to UPMC's human resources department. (Doc. 60, ¶¶ 31-32; Doc. 71, ¶¶ 31-32). The parties dispute whether CBD use could have led to these particular test results. (Doc. 60, ¶ 33; Doc. 71, ¶ 33). Botts discussed Rheem's actions with Omar Terrazas ("Terrazas"), Rheem's supervisor, and Terrazas expressed disappointment in Rheem. (Doc. 60, ¶ 34; Doc. 71, ¶ 34). UPMC terminated Rheem on February 19, 2021. (Doc. 60, ¶ 36; Doc. 71, ¶ 36). UPMC claims both Botts and Elizabeth Ritter were involved in terminating Rheem; Rheem asserts the decision was solely made by Botts. (Doc. 60, ¶ 36; Doc. 71, ¶ 36).

On January 3, 2024, Rheem filed the operative second amended complaint asserting eight counts under federal and state law. (Doc. 28). Count I alleges that UPMC violated the Americans with Disabilities Act ("ADA") by discriminating against Rheem on the basis of his disability. (Doc. 28, ¶¶ 86-112). Count II alleges that UPMC violated the ADA by retaliating against Rheem after he requested accommodations. (Doc. 28, ¶¶ 113-21). Count III alleges that UPMC violated the ADA by interfering with Rheem exercising his rights under the ADA. (Doc. 28, ¶¶ 122-32). Count IV alleges that UPMC violated the Pennsylvania Human Relations Act ("PHRA") by discriminating against Rheem on the basis of his disability. (Doc. 28, ¶¶ 133-55). Count V alleges that UPMC violated the PHRA by retaliating against Rheem for requesting accommodations. (Doc. 28, ¶¶ 156-62). Count VI alleges that UPMC violated the PHRA by interfering with Rheem exercising his rights under the PHRA. (Doc. 28, ¶¶ 163-72). Count VII alleges that UPMC violated the Family and Medical Leave Act ("FMLA") by retaliating against Rheem for exercising his rights under the FMLA. (Doc. 28, ¶¶ 173-81). Count VIII alleges that UPMC violated the FMLA by interfering with Rheem exercising his rights under the FMLA. (Doc. 28, ¶¶ 182-93).

On March 12, 2025, UPMC filed a motion for summary judgment along with a statement of facts and corresponding exhibits. (Doc. 58; Doc. 60; Doc. 60-1). On March 13, 2025, UPMC filed a brief in support. (Doc. 61). On April 2, 2025, Rheem filed a brief in opposition, an answer to the statement of facts, and corresponding exhibits. (Doc. 70; Doc. 71; Doc. 71-1; Doc. 71-2). On April 16, 2025, UPMC filed a reply brief. (Doc. 76). Accordingly, the motion for summary judgment is now ripe for disposition.

## II.    MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249.

Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* *477 U.S. at 249*.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

## III. DISCUSSION

UPMC moves for summary judgment on five bases. First, UPMC argues it is entitled to summary judgment on Counts I and IV because Rheem has failed to establish a *prima facie*

case of disability discrimination. (Doc. 61, at 11-13). Second, UPMC avers it is entitled to summary judgment on Counts II, V, and VII because Rheem has failed to establish a *prima facie* case of retaliation. (Doc. 61, at 24-27). Third, UPMC contends that it is entitled to summary judgment on Counts I, II, IV, V, and VII because it had non-discriminatory reasons for terminating Rheem. (Doc. 61, at 13-24, 27). Fourth, UPMC asserts it is entitled to summary judgment on Counts III and VI because Rheem has failed to provide any evidence that UPMC interfered with Rheem's attempts to request accommodations under the ADA and the PHRA. (Doc. 61, at 27-29). Fifth, UPMC claims it is entitled to summary judgment on Count VIII because Rheem has failed to provide any evidence that UPMC interfered with his attempts to request leave under the FMLA. (Doc. 61, at 29-31). Finally, UPMC concludes that Rheem should be precluded from asserting any claims for damages related to UPMC's alleged ADA and PHRA violations after February 2021 because Rheem was no longer a qualified person with a disability after that time. (Doc. 61, at 31-33).

The Court will begin its analysis with Counts I, II, IV, V, and VII, Rheem's discrimination and retaliation claims. (Doc. 28, ¶¶ 86-121, 133-62, 173-81). Discrimination claims under the ADA and PHRA and retaliation claims under the ADA, PHRA, and FMLA are analyzed through the *McDonnell Douglas*[2] burden shifting standard under which Rheem

---

[2] This standard was first established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, in which the Court held that when analyzing discriminatory hiring claims, courts first must consider whether a plaintiff has established a *prima facie* case that an employer's decision not to hire them was discriminatory. 411 U.S. 792, 802 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701 (1993). The Court further found that once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a non-discriminatory reason for its decision not to hire the plaintiff. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. The Court concluded that if the employer establishes a non-discriminatory reason for not hiring the plaintiff, the burden shifts back to the plaintiff to

must first establish a *prima facie* case of discrimination and retaliation. *See Thimons v. PNC Bank, N.A.*, 254 F. App'x 896, 897 (3d Cir. 2007) (nonprecedential); *see also Cullen v. Select Med. Corp.*, 779 F. App'x 929, 931 (3d Cir. 2019) (nonprecedential). For the reasons discussed *infra* Sections III.A, III.B, there are genuine disputes of material fact which preclude summary judgment on Rheem's *prima facie* cases of discrimination and retaliation, and as such, the Court will continue its analysis under the *McDonnell Douglas* standard. *See Thimons*, 254 F. App'x at 897; *see also Cullen*, 779 F. App'x at 931. Under that standard, the Court will next analyze whether UPMC has provided non-discriminatory reasons for terminating Rheem and whether Rheem has presented evidence from which a reasonable jury may infer that UPMC's proposed reasons were pretextual. *See Thimons*, 254 F. App'x at 897; *see also Cullen*, 779 F. App'x at 931. As discussed *infra* Section III.C, the Court finds UPMC has presented nondiscriminatory reasons for terminating Rheem, but Rheem has presented evidence from which a reasonable jury may infer that those reasons were pretextual. Accordingly, the Court will **DENY** UPMC's motion for summary judgment on Counts I, II, IV, V, VII. (Doc. 58).

After discussing Rheem's discrimination and retaliation claims, the Court will turn to Counts III, VI, and VIII, Rheem's interference claims. (Doc. 28, ¶¶ 122-32, 163-72, 182-93). For the reasons discussed *infra* Sections III.D, III.E, the Court finds that Rheem has failed to present evidence from which a reasonable jury may infer UPMC interfered with Rheem exercising his rights under the ADA, PHRA, or FMLA. Accordingly, the Court will **GRANT** UPMC's motion for summary judgment on Counts III, VI, and VIII. (Doc. 58). Finally, the Court will assess UPMC's assertion that Rheem has failed to establish he remained qualified

---

establish that the employer's proposed non-discriminatory reason is pretextual or "discriminatory in its application." *McDonnell Douglas Corp.*, 411 U.S. at 807.

to perform the essential duties of his job after February 2021. (Doc. 61, at 31-33). For the reasons discussed *infra* Section III.F, the Court finds that Rheem has presented evidence from which a reasonable jury may infer that Rheem remained qualified to perform the essential duties of his job after February 2021 and the Court will **DENY** UPMC's motion for summary judgment that basis. (Doc. 58).

A. THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT ON RHEEM'S *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION.

Counts I and IV allege that UPMC violated the ADA and the PHRA by discriminating against Rheem on the basis of his disability. (Doc. 28, ¶¶ 86-112, 133-55). UPMC contends that Rheem has failed to establish a *prima facie* case of disability discrimination because Rheem has failed to provide evidence from which a reasonable jury may conclude that discrimination was the cause of Rheem's termination. (Doc. 61, at 11-13). Rheem avers that he has made a *prima facie* case of discrimination, and there is a genuine dispute of material fact regarding whether his termination was caused by disability discrimination. (Doc. 70, at 14-29).

The ADA provides that employers "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112 (a). Similarly, the PHRA provides that it is unlawful "[f]or any employer because of. . . disability. . . to discharge from employment such individual. . . or to otherwise discriminate against such individual. . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment." 43 Pa. Stat. Ann. § 955 (a). Courts apply the same standards for both PHRA and ADA claims. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (stating "our analysis of

an ADA claim applies equally to a PHRA claim"); *see also Kocher v. Municipality of Kingston*, 400 F. Supp. 3d 138, 151 (M.D. Pa. 2019).

To survive a motion for summary judgment, a plaintiff must provide evidence from which a reasonable jury may conclude that the plaintiff has established a *prima facie* case for discrimination under the ADA and the PHRA. *See Thimons.*, 254 F. App'x at 897. To make a *prima facie* case, a plaintiff "must demonstrate: '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Thimons*, 254 F. App'x at 897 (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). "The burden of proving the *prima facie* case 'is not intended to be onerous.'" *Hollingsworth v. R. Home Prop. Mgmt., LLC*, 498 F. Supp. 3d 590, 603 (E.D. Pa. 2020) (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)). Once the plaintiff meets their initial burden to establish a *prima facie* case, courts apply the *McDonnell Douglas* burden-shifting standard, and the "burden then shifts to the employer to present a non-discriminatory reason for the adverse decision." *Thimons*, 254 F. App'x at 897.

UPMC moves for summary judgment on the third element of a *prima facie* case, discriminatory causation. (Doc. 61, at 11-13). To meet the discriminatory causation requirement, the plaintiff must provide evidence "sufficient to create an inference that a causative link exists between his disability and his termination." *See Hollingsworth*, 498 F. Supp. 3d at 603. A plaintiff may rely on both direct and circumstantial evidence to show a genuine dispute of material fact regarding discriminatory causation. *See Decker v. Alliant Techs., LLC*, 871 F. Supp. 2d 413, 428 (E.D. Pa. 2012). For example, evidence that a defendant

subjected a plaintiff to unusually harsh treatment or unjustified punishment shortly after the plaintiff requested accommodations or took medical leave may provide circumstantial evidence from which a reasonable jury could infer discriminatory causation. *See Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 651 (W.D. Pa. 2018). Comparator evidence from which a reasonable jury may conclude that similarly situated non-disabled employees were treated more favorably than the plaintiff may establish a genuine dispute of material fact regarding discriminatory causation, however, a plaintiff is not required to present comparator evidence to survive a motion for summary judgment. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268–69 (3d Cir. 2010) (finding in the context of sex discrimination "[a]lthough comparative evidence is often highly probative of discrimination, it is not an essential element of a plaintiff's case"); *see also Ward v. City Lighting Prods. Co.*, No. CV 20-208, 2021 WL 1720661, at *6 (W.D. Pa. Apr. 30, 2021) (finding comparator evidence is not required to prove disability discrimination). To show a genuine dispute of material fact regarding discriminatory causation, a plaintiff only needs to provide an "adequate evidentiary basis [for a reasonable jury] to infer" that the plaintiff's disability was "a determinative factor in [the defendant's] decision to terminate him." *Decker*, 871 F. Supp. 2d at 428.

UPMC argues that there is no evidence in the record that would support a jury finding that discrimination caused Rheem's termination. (Doc. 61, at 11-13). Rheem presents adequate evidence to create a genuine dispute of material fact regarding causation because Rheem presents evidence from which a reasonable jury may infer that UPMC treated Rheem unusually harshly after management at UPMC noticed his disability worsening and after Rheem began to miss work to attend full-day physical therapy sessions. (Doc. 70, at 18-19, 32, 51; Doc. 71, ¶¶ 52-58, 64-67, 127-30, 138-44; Doc. 71-2, at 27-31, 167, 285, 310-40, 663-

68; Doc. 75-1, at 27-31). First, Rheem presents testimony from Botts, who was part of the decision to terminate Rheem, stating that in the months leading up to Rheem's termination, she was aware that Rheem's condition was worsening. (Doc. 70, at 32; Doc. 71, ¶¶ 64-67; Doc. 71-2, at 167). Rheem further presents medical records showing he needed to miss work several times in the month before his termination to attend full-day physical therapy sessions. (Doc. 70, at 51; Doc. 71, ¶¶ 52-58; Doc. 71-2, at 310-40). Rheem also presents testimony from Terrazas, Rheem's supervisor, stating that Terrazas was aware Rheem was attending physical therapy immediately prior to his termination. (Doc. 70, at 51; Doc. 71, ¶¶ 52-58; Doc. 71-2, at 285). Based on this evidence, a reasonable jury may infer that a month prior to his termination, those who made the decision to terminate Rheem were aware that Rheem's disability was worsening, and Rheem was required to miss full days of work to attend physical therapy.

Rheem next points to evidence from which a reasonable jury may infer that UPMC's policies typically allow an employee who tests positive for marijuana to return to work under a Last Chance Agreement. (Doc. 70, at 17-18; Doc. 71, ¶ 13; Doc. 71-2, at 8). Rheem provides emails and messages from caseworkers at LifeSolutions, an entity that aids UPMC in its fitness for duty inquiries, expressing disbelief and outrage that Rheem was terminated without first being offered the opportunity to return under a Last Chance Agreement. (Doc. 70, at 18; Doc. 71, ¶¶ 138-44; Doc. 71-2, at 663-68). UPMC avers this evidence is irrelevant because the caseworkers from LifeSolutions do not work for UPMC. (Doc. 76, at 6-12). However, Rheem presents UPMC's Fitness for Duty Policy which specifically states that LifeSolutions consults with UPMC during fitness for duty inquiries and presents testimony from Etter, who testified in both her personal capacity and as a 30(b)(6) witness, stating that LifeSolutions "support[s]

[UPMC's] fitness for duty process," evaluates UPMC employees' circumstances, and makes recommendations to UPMC. (Doc. 71-2, at 8, 28). From this, a reasonable jury may infer that LifeSolutions caseworkers would be familiar with UPMC's Fitness for Duty Policy and whether Rheem's treatment was out of the ordinary, unusually harsh, or in conflict with UPMC's policies. (Doc. 71-2, at 8, 28). Rheem also presents deposition testimony from Etter stating that she was unaware of any other non-probationary employees being terminated for a first-time marijuana offense. (Doc. 70, at 18-19; Doc. 71, ¶¶ 127-30; Doc. 75-1, at 27-31). Rheem further points to HR records and communications regarding individuals who were not terminated after drug and alcohol offenses from which a reasonable jury may infer that UPMC regularly offered individuals who committed drug and alcohol offenses more serious than Rheem's alleged offense the opportunity to return to work under Last Chance Agreements. (Doc. 74, at 19-22; Doc. 75, ¶¶ 134-35; Doc. 75-11; Doc. 75-12; Doc. 75-13; Doc. 75-18; Doc. 75-19; Doc. 75-20; Doc. 75-21; Doc. 75-22; Doc. 75-23; Doc. 75-24).

UPMC avers that the Court should not consider evidence of other employees returning to work under Last Chance Agreements because Rheem has failed to provide comparator evidence. (Doc. 76, at 6-12). According to UPMC, Rheem has failed to present any employees who are similarly situated to Rheem in that they share a managerial role. (Doc. 76, at 6-12). While the Court recognizes that comparator evidence would strengthen Rheem's claim, a plaintiff is not required to present comparator evidence to make a *prima facie* case for discrimination. *See Anderson*, 621 F.3d at 268–69; *see also Ward*, 2021 WL 1720661, at *6-7 (stating "though [plaintiff] lacks a sufficient comparator, she has submitted circumstantial evidence that, when viewed in the light most favorable to her as the non-moving party, raises an inference of discrimination surrounding her termination"). Rather, a plaintiff is required

14

to present evidence from which a reasonable jury may infer that his disability was a determinative factor in his termination. *See Decker*, 871 F. Supp. 2d at 428. Based on the record before the Court, a reasonable jury may infer that caseworkers familiar with UPMC's human resources procedures and norms believed UPMC's treatment of Rheem was unusually harsh and that Rheem was the only employee UPMC subjected to such harsh treatment. (Doc. 70, at 18-19; Doc. 71, ¶¶ 127-30, 138-44; Doc. 71-2, at 27-31, 663-68; Doc. 75-1, at 27-31). A reasonable jury may also infer that UPMC subjected Rheem to this unusually harsh treatment shortly after Rheem began to miss work to attend full-day physical therapy sessions and after UPMC management noticed Rheem's disability was worsening. (Doc. 70, at 32; Doc. 71, ¶¶ 64-67; Doc. 71-2, at 167, 285, 310-40).

The Court finds Rheem has met his burden of presenting sufficient circumstantial evidence from which a reasonable jury may infer that Rheem's disability was a determinative factor in his termination. *See Hollingsworth*, 498 F. Supp. 3d at 603, *see also Decker*, 871 F. Supp. 2d at 428; *see also Jakomas*, 342 F. Supp. 3d at 651; *see also Ward*, 2021 WL 1720661, at *6-7. Accordingly, there is a genuine dispute of material fact regarding Rheem's *prima facie* case of discrimination. The burden shifts to UPMC to provide a nondiscriminatory reason for terminating Rheem, and as discussed *infra* Section III.C, UPMC has provided three nondiscriminatory reasons for terminating Rheem. However, as discussed *infra* Section III.C, Rheem has presented evidence from which a reasonable jury may infer that those reasons were pretextual, and UPMC's motion for summary judgment on Counts I and IV is **DENIED**. (Doc. 58).

B. THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT ON RHEEM'S *PRIMA FACIE* CASE OF RETALIATION.

Counts II, V, and VII allege that UPMC violated the ADA, the PHRA, and the FMLA by retaliating against Rheem for exercising his rights under each respective act. (Doc. 28, ¶¶ 113-21, 156-62, 173-81). UPMC moves for summary judgment on these claims, asserting that Rheem has failed to establish a *prima facie* case of retaliation. (Doc. 61, at 24-27). According to UPMC, Rheem has not presented any evidence of suspicious timing between his requests for accommodations and his termination from which a reasonable jury may infer that retaliation caused his termination. (Doc. 61, at 24-27). Rheem counters that he presents sufficient evidence of suspicious timing and discrimination to create a genuine dispute of material fact regarding causation. (Doc. 70, at 49-55).

The ADA, the PHRA, and the FMLA prohibit employers from retaliating against employees for engaging in protected activity under each respective act. 42 U.S.C.A. § 12203 (a); 43 Pa. Stat. Ann. § 955 (d); 29 U.S.C.A. § 2615 (a)(2). Retaliation claims under the ADA, PHRA, and the FMLA are all analyzed under the same standard. *See Hatch v. Franklin Cnty.*, 755 F. App'x 194, 201 (3d Cir. 2018) (nonprecedential) (applying the same standard to assess ADA, PHRA, and FMLA claims). For a retaliation claim to survive a motion for summary judgment, a plaintiff "must establish a *prima facie* case by showing '(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007), *as amended* (Aug. 28, 2007)). Once a plaintiff establishes a *prima facie* case, courts apply the *McDonnell Douglas* burden-shifting standard, and the burden shifts to the defendant to present a non-discriminatory reason for termination. *See Cullen*, 779 F.

App'x at 931; *see also Sloat v. Off. of Info. Tech.*, No. 1:19-CV-01595, 2021 WL 5565855, at *4 (M.D. Pa. Nov. 29, 2021).

UPMC argues it is entitled to summary judgment on Rheem's retaliation claims because Rheem fails under the third *prima facie* requirement of causation. (Doc. 61, at 24-27). There are "two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001). While the timing of an adverse action is highly probative of retaliation, a plaintiff may rely on other evidence absent suspicious timing. *See Abramson*, 260 F.3d at 288; *see also Sexton v. Cmty. Life Team, Inc.*, No. 1:22-CV-02018, 2024 WL 4311484, at *9 (M.D. Pa. Sept. 26, 2024), *reconsideration denied*, No. 1:22-CV-02018, 2024 WL 4905976 (M.D. Pa. Nov. 27, 2024). Further, absent suspicious timing, a plaintiff may rely on circumstantial evidence such as evidence of discriminatory treatment. *See Farrell*, 206 F.3d at 280-81 (overturning a grant of summary judgment because the district court was too limited in the circumstantial evidence it considered while evaluating retaliation). Like with discrimination, establishing a *prima facie* case of retaliation is not an onerous burden. *See Neiderlander v. Am. Video Glass Co.*, 80 F. App'x 256, 261 (3d Cir. 2003); *see also Polen v. Pottstown Hosp. -Tower Health*, No. CV 18-4025, 2019 WL 6841496, at *5 (E.D. Pa. Dec. 16, 2019).

UPMC avers that there is no evidence that retaliation was the cause of Rheem's termination. (Doc. 61, at 24-27). According to UPMC, Rheem's last protected activity was in August 2020, over six months before his termination, and no reasonable jury may infer causation due to the lack of proximity between Rheem's protected activity and termination. (Doc. 61, at 26). However, as discussed *supra* Section III.A, Rheem points to evidence in the record from which a reasonable jury may conclude that Rheem required accommodations in

January 2021, a month before he was terminated, to attend full-day physical therapy sessions. (Doc. 70, at 51; Doc. 71, ¶¶ 52-5; Doc. 71-2, at 285, 310-40). Further, a jury may reasonably infer causation based on circumstantial evidence such as evidence of discrimination. *See Abramson*, 260 F.3d at 288; *see also Farrell*, 206 F.3d at 280-81; *see also Sexton*, 2024 WL 4311484, at *9. As discussed *supra* Section III.A, Rheem presents evidence from which a reasonable jury could conclude that Rheem was discriminated against on the basis of his worsening disability. (Doc. 70, at 18-19, 32; Doc. 71, ¶¶ 64-67, 127-30, 138-44; Doc. 71-2, at 27-31, 167, 285, 310-40, 663-68; Doc. 75-1, at 27-31). A reasonable jury may conclude that Rheem was discriminated against and terminated shortly after he requested accommodations to attend full-day physical therapy sessions. (Doc. 70, at 51; Doc. 71, ¶¶ 52-5; Doc. 71-2, at 57-58, 285, 310, 318, 320-40). Based on this, a reasonable jury may infer that there was a causative link between Rheem's requests for accommodations and his termination. *See Abramson*, 260 F.3d at 288; *see also Farrell*, 206 F.3d at 280-81; *see also Sexton*, 2024 WL 4311484, at *9. Accordingly, there is a genuine dispute of material fact regarding whether Rheem has made a *prima facie* case of retaliation. The burden shifts then to UPMC to provide a nondiscriminatory reason for terminating Rheem, and as discussed *infra* Section III.C, UPMC has provided three nondiscriminatory reasons for terminating Rheem. However, as discussed *infra* Section III.C, Rheem has presented evidence from which a reasonable jury may infer that those reasons were pretextual, and therefore UPMC's motion for summary judgment on Counts II, V, and VII is **DENIED**. (Doc. 58).

C.  THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT BASED ON UPMC'S PROPOSED NON-DISCRIMINATORY REASONS FOR TERMINATION.

UPMC avers it is entitled to summary judgment on Counts I, II, IV, V, and VII because it had non-discriminatory reasons for terminating Rheem and no reasonable jury could conclude that these reasons are pretextual. (Doc. 61, at 13-24, 27). Rheem counters that there is a genuine dispute of material fact regarding whether UPMC's stated reasons for terminating Rheem are pretextual because a reasonable jury may infer that the proposed reasons were based on fabrications and inconsistent facts. (Doc. 70, at 32-49, 55).

Once a plaintiff meets their initial burden to establish a *prima facie* case of discrimination and/or retaliation, courts apply the *McDonnell Douglas* burden-shifting standard and the "burden then shifts to the employer to present a non-discriminatory reason for the adverse decision." *Thimons*, 254 F. App'x at 897; *see also Cullen*, 779 F. App'x at 931; *see also Sloat*, 2021 WL 5565855, at *4. The *McDonnell Douglas* standard is the same for both discrimination and retaliation claims. *See Cullen*, 779 F. App'x at 931; *see also Sloat*, 2021 WL 5565855, at *4. "Once an employer presents a non-discriminatory reason for termination. . . the employee must 'present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision.'" *Thimons*, 254 F. App'x at 898 (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)). The plaintiff must present evidence from which a reasonable jury may conclude that the defendant's non-discriminatory reasons for termination "[were] post hoc fabrication[s], or pretext[ual]. '[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause.'" *Thimons*, 254 F. App'x at 898 (citations omitted).

It is insufficient for a plaintiff to only present evidence "that the employment decision was wrong or mistaken. Rather, the plaintiff must show that the reasons for the employment decision are beset by 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' such that a reasonable factfinder could find the justification 'unworthy of credence.'" *Showers v. Endoscopy Ctr. of Cent. Pennsylvania, LLC*, 58 F. Supp. 3d 446, 466 (M.D. Pa. 2014) (citations omitted). To survive summary judgment, a plaintiff needs to show a "genuine dispute of fact regarding the credibility of [the defendant]'s proffered reason for her discharge.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). Summary judgment is not warranted where a plaintiff presents evidence of factual inconsistencies in a defendant's stated non-discriminatory reasons for termination from which a reasonable jury may conclude that the non-discriminatory reasons lack credibility. *See Cullen*, 779 F. App'x at 932; *see also Beck v. Brookville Behav. Health, Inc.*, No. 2:19-CV-01348, 2021 WL 1238918, at *8 (W.D. Pa. Apr. 2, 2021).

UPMC asserts that Rheem was fired due to his conduct at a staff meeting, his positive marijuana test, and his dishonesty about marijuana use. (Doc. 60-1, at 466-67; Doc. 61, at 13-24). UPMC has asserted non-discriminatory reasons for terminating Rheem. *See Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 595 (E.D. Pa. 2019) (finding a positive drug test is a non-discriminatory reason for termination). Accordingly, the burden shifts back to Rheem to show a "genuine dispute of fact regarding the credibility of [UPMC]'s proffered reason for her discharge." *Burton*, 707 F.3d at 431.

Here, summary judgment is not warranted because there is a genuine dispute of material fact as to the credibility of UPMC's stated reasons for terminating Rheem. *See Burton*, 707 F.3d at 431. Rheem presents factual disputes and inconsistencies regarding UPMC's

reasons for terminating him from which a reasonable jury may disbelieve UPMC's assertion that Rheem was terminated for nondiscriminatory reasons. For example, UPMC's response to interrogatories states that Rheem was terminated, in part, because at a staff meeting, Rheem appeared lethargic and overmedicated and discussed obtaining medical-grade THC gummies. (Doc. 71-2, at 776). However, Rheem points to testimony from Leopardi, who attended the meeting, stating that Rheem did not appear lethargic and overmedicated at the meeting and did not discuss obtaining medical-grade THC gummies. (Doc. 70, at 40; Doc. 71, ¶ 76; Doc. 71-2, at 131-32).

Further, Rheem presents testimony from Botts, who was part of the decision to terminate Rheem, stating that while she was making her decision to terminate Rheem, she considered a picture of a gummy Rheem allegedly drew. (Doc. 70, at 45; Doc. 71, ¶¶ 183-84; Doc. 71-2, at 175). However, Rheem presents testimony from Etter stating that nobody in UPMC management or human resources saw this picture until after Rheem was terminated, so a reasonable jury may conclude that Botts could not have considered it. (Doc. 70, at 45; Doc. 71, ¶¶ 183-84; Doc. 71-2, at 42). Rheem further presents testimony from Botts and Etter stating that Rheem was not terminated due to his drug test results, but also presents Rheem's termination letter and UPMC's response to interrogatories stating that Rheem's drug test was a reason for his termination. (Doc. 70, at 37-38, 46; Doc. 71, ¶ 33, 177-82; Doc. 71-2, at 22, 33-34, 205, 407-08, 776). Further, Rheem presents handwritten notes from Etter which a reasonable jury may interpret to mean that Etter was informed CBD oil could cause a positive drug test result, particularly where the CBD oil was not "free of impurities." (Doc. 70, at 37-38; Doc. 71, ¶ 33; Doc. 71-2, at 205). Rheem also states that he intends to present expert

testimony at trial that his CBD usage could have caused his drug test results. (Doc. 70, at 38-39).

Finally, Rheem provides testimony from Botts claiming that Rheem admitted to Terrazas, his supervisor, that he had used marijuana, and provides an HR memo written by Botts claiming that Rheem discussed using THC with Cami Bingaman ("Bingaman"), a former coworker. (Doc. 70, at 35-37; Doc. 71, ¶¶ 78-87; Doc. 71-2, at 174, 374). Rheem presents deposition testimony from Terrazas and Bingaman in which both deny that Rheem ever told them that he used marijuana or THC, and both deny that they told Botts that Rheem admitted to using marijuana or THC. (Doc. 70, at 35-37; Doc. 71, ¶¶ 78-87; Doc. 71-2, at 291-92, 386). Based on these factual disputes and inconsistencies, a reasonable jury may conclude that UPMC's reasons for terminating Rheem lack credibility. See *Cullen*, 779 F. App'x at 932; *see also Beck,* 2021 WL 1238918, at *8.

Genuine issues of material facts exist in the record as to UPMC's proffered non-discriminatory reasons for Rheem's termination. As such, the motion for summary judgment as to Counts I, II, IV, V, and VII is **DENIED**. (Doc. 58).

D. SUMMARY JUDGMENT IS WARRANTED ON RHEEM'S ADA AND PHRA INTERFERENCE CLAIMS.

Counts III and VI allege that UPMC violated the ADA and the PHRA by interfering with Rheem's exercise of his rights under those acts. (Doc. 28, ¶¶ 122-32, 163-72). UPMC submits that it is entitled to summary judgment on these claims because the undisputed record establishes that UPMC consistently granted Rheem's requests for accommodations and did not interfere with these requests. (Doc. 61, at 27-28). Rheem counters that if he had not been fired, he would have required accommodations to attend physical therapy sessions, and a

reasonable jury could conclude that his termination interfered with future potential accommodations requests. (Doc. 70, at 56-58).

Both the ADA and the PHRA prohibit employers from interfering with a plaintiff's attempts to request accommodations. *See* 42 U.S.C.A. § 12203 (b); 43 Pa. Stat. Ann. § 955 (d). The Third Circuit has not "set forth the elements for an ADA interference claim."[3] *Piotrowski v. Signature Collision Centers, LLC*, No. 2:21-CV-02115, 2021 WL 4709721, at *2 (E.D. Pa. Oct. 8, 2021) (Doc. 61, at 28; Doc. 70, at 56). However, courts generally apply the standards used to assess interference claims under the Fair Housing Act ("FHA") to assess interference claims under the ADA. *See Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017) (stating "[w]hile this court has not previously addressed an interference claim made pursuant to the ADA. . . guidance can be found in our application of the anti-interference provision of the Fair Housing Act"); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003) (applying the FHA interreference standard to the ADA); *see also Gardner v. Kutztown Univ.*, No. CV 22-1034, 2024 WL 1321068, at *30 (E.D. Pa. Mar. 27, 2024) (same). Under that standard, courts look to the "dictionary definition [of interference] as 'the act of meddling in or hampering an activity or process.'" *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 113 (3d Cir. 2017) (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1128-29 (9th Cir. 2001)). Courts have found that a defendant meddles with or hampers a plaintiff's attempts to request accommodations by actively trying to make the process to request accommodations more difficult or by creating disincentives for requesting accommodations. *See Gardner*, 2024

---

[3]"[T]he PHRA and the ADA are interpreted in a co-extensive manner, with the same standards for determining liability." *Keyhani v. Trs. of Univ. of Pennsylvania*, 812 F. App'x 88, 92 (3d Cir. 2020) (nonprecedential). Accordingly, the Court will analyze Rheem's ADA and PHRA interference claims under the same standards.

WL 1321068, at *31 (finding interference where a defendant issued a blanket policy barring the type of accommodation plaintiff required); *see also* Piotrowski, 2021 WL 4709721, at *2 (finding interference where defendant only responded to accommodations requests by requesting more information); *see also* Equal Emp. Opportunity Comm'n v. Geisinger Health, No. CV 21-4294-, 2022 WL 10208553, at *17 (E.D. Pa. Oct. 17, 2022) (finding interference where a defendant created "negative tags" in an employee's records after an employee requested accommodations).

The record does not contain any evidence from which a reasonable jury could determine that UPMC interfered with Rheem's exercise of his rights under the ADA or the PHRA. While Rheem presents evidence that he was terminated a month after requesting accommodations to attend a physical therapy session, the undisputed record reflects that these accommodations were approved. (Doc. 71, ¶ 56; Doc. 71-2, at 57-58, 285, 310, 318, 320-40). The record contains no evidence that UPMC ever made requesting accommodations difficult or disincentivized requests. As such, UPMC's motion for summary judgment on Counts III and VI is **GRANTED**. (Doc. 58).

E.  Summary Judgment is warranted on Rheem's FMLA interference claim.

Count VIII alleges that UPMC violated the FMLA by interfering with Rheem's attempts to request FMLA leave. (Doc. 28, ¶¶ 182-93). UPMC submits that the record does not contain any evidence that UPMC ever interfered with Rheem's requests for FMLA leave, and that the undisputed record establishes that UPMC granted Rheem's FMLA leave requests. (Doc. 61, at 29-31). Rheem does not address UPMC's argument regarding FMLA interference. (Doc. 70).

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C.A. § 2615 (a) (1). An FMLA interference claim requires a plaintiff to establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Ross v. Gilhuly, 755 F.3d 185, 191–92 (3d Cir. 2014) (citing Johnson v. Cmty. Coll. of Allegheny Cnty., 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)). FMLA interference analysis does not turn on discriminatory or retaliatory conduct but simply whether an employer withheld FMLA benefits. See Ross, 755 F.3d at 192; see also Callison v. City of Philadelphia, 430 F.3d 117, 120 (3d Cir. 2005) (stating "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA"). "If FMLA benefits were not actually withheld, 'summary judgment must be granted in favor of the defense' with respect to an interference claim." Gravel v. Costco Wholesale Corp., 230 F. Supp. 3d 430, 437 (E.D. Pa. 2017) (quoting Moore v. U.S. Foodservice, Inc., No. CIV.A. 11-2460, 2013 WL 5476405, at *8 (D.N.J. Sept. 30, 2013)).

There is no evidence in record from which a reasonable jury may find that UPMC interfered with Rheem's exercise of his FMLA rights. Rheem concedes that UPMC granted him FMLA leave in 2020 and granted his most recent requests for a modified schedule. (Doc. 71, ¶¶ 46-48, 56; Doc. 71-2, at 57-58, 285, 310, 318, 320-40). There is no genuine dispute of material fact regarding FMLA interference. See Gravel, 230 F. Supp. 3d at 437. Accordingly, UPMC's motion for summary judgment on Count VIII is **GRANTED**. (Doc. 58).

F. THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT BASED UPON RHEEM'S STATUS AS A QUALIFIED PERSON WITH A DISABILITY.

UPMC submits that even if this Court finds Rheem's ADA and PHRA claims survive summary judgment, "his damages related to his ADA/PHRA claims must end in February 2021" because there is no evidence from which a reasonable jury may conclude that Rheem was qualified to perform the essential functions of his position after February 2021. (Doc. 61, at 31-33). Rheem avers that he has provided sufficient evidence from which a reasonable jury may conclude that he remained qualified to perform the essential duties of his job after February 2021. (Doc. 70, at 58-61).

To survive a motion for summary judgment, a plaintiff bringing claims under the ADA and PHRA must establish he is "qualified to perform the essential functions of the job with or without reasonable accommodations." *Thimons*, 254 F. App'x at 897. A plaintiff must present evidence from which a reasonable jury may conclude that "he/she 'satisfies the requisite skill, experience, education and other job-related requirements of the employment position'. . . [H]e/she must then establish that 'with or without reasonable accommodation, [he/she] can perform the essential functions of the position held or sought.'" *See Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 326 (3d Cir. 2003) (citations omitted). Summary judgment is not warranted where there "is a genuine issue of material fact on the issue of whether [the plaintiff] was a qualified individual." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998). A plaintiff may show a genuine dispute of material fact by presenting evidence from which a reasonable jury may infer that the plaintiff could have continued to perform the essential duties of their job after being granted reasonable accommodations such

as "limited periods of medical leave." *Schneider v. Works*, 223 F. Supp. 3d 308, 317 (E.D. Pa. 2016).

UPMC does not contest that Rheem had the skills, education, and experience necessary to be a qualified individual but instead submits that Rheem was unable to perform the essential functions of his job after February 2021. (Doc. 61, at 31-33). UPMC avers that Rheem testified during his deposition that he could not work at the time of his termination due to his worsening disability. (Doc. 60, ¶ 43; Doc. 60-1, at 523; Doc. 61, at 33). However, Rheem points to contradictory testimony from the same deposition in which Rheem states he could have continued working with reasonable accommodations such as limited periods of medical leave and remote work. (Doc. 60-1, at 610-11; Doc. 70, at 59). Further, the record contains the testimony of Terrazas, Rheem's supervisor from 2018 until his termination in February 2021, in which Terrazas states that Rheem was an "excellent employee" the entire time Terrazas supervised him. (Doc. 70, at 61; Doc. 71, ¶¶ 185-87; Doc. 71-2, at 283-84). Rheem also continued to apply for jobs after February 2021. (Doc. 70, at 60-61; Doc. 71, ¶ 43; Doc. 71-2, at 238, 266-69). Finally, Rheem provides deposition testimony from Etter stating that she was unaware of any essential duties of Rheem's job that Rheem was unable to perform. (Doc. 70, at 60; Doc. 71, ¶¶ 188-192; Doc. 71-2, at 42). Based on this evidence, "there is a genuine issue of material fact on the issue of whether [Rheem] was a qualified individual." *Deane*, 142 F.3d at 148. Accordingly, UPMC's motion for summary judgment on this basis is **DENIED**. (Doc. 58)

## IV.   CONCLUSION

For the foregoing reasons, UPMC's motion for summary judgment is **GRANTED in part** and **DENIED in part**. (Doc. 58). UPMC's motion is **GRANTED** as to Counts III, VI,

and VIII. (Doc. 28). UPMC's motion is **DENIED** as to Counts I, II, IV, V, VII. (Doc. 28).

Counts III, VI, and VIII of the amended complaint are hereby **DISMISSED**. (Doc. 58).

An appropriate Order follows.

Dated: October 27, 2025                              *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **United States District Judge**